*Judgment reversed and remanded.*

C. C. Dreman, County Judge of St. Clair County, Appellee, v. Lucille Fields et al., Appellants.

Term No. 49F6.

338

Opinion filed April 25, 1949.
Released for publication May 25, 1949.

WM. P. FLEMING, EDW. F. O'MALLEY, LOUIS F. ORR, ROBERT B. RUTLEDGE, and R. E. COSTELLO, all of East St. Louis, for appellants.

PHILIP G. LISTEMAN, of East St. Louis, for appellee; LLOYD MIDDLETON, of East St. Louis, of counsel.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from an order of the county judge of the county court of St. Clair county, C. C. Dreman (hereinafter called the petitioner), finding appellants, Lucille Fields, Joseph L. Sharp, Mary E. Spires, Margaret Carpenter and Mamie Lusk (hereinafter called respondents) guilty of contempt and imposing jail sentences upon such respondents, and removing respondents from their offices as judges and clerks of election. Two of the respondents, Margaret Carpenter and Mamie Lusk, were sentenced to three months in the

county jail, and the other respondents were each sentenced to six months in the county jail of St. Clair county. The respondents were also ordered to pay the costs of the proceeding, and were denied pay for serving as judges and clerks at the primary election held on April 13, 1948.

Respondents were judges and clerks of precinct number 12 in East St. Louis, and served as judges and clerks for the primary election held on April 13, 1948. They had all served previously as election officials. The evidence showed that prior to April 13, 1948, the county judge had conducted a class of instruction for poll officials at the board of election commissioners' office in East St. Louis, and that all of the respondents, except respondent Sharp, had attended and were furnished with pamphlets explaining the duties and obligations of their respective offices.

On the day before the primary, a poll book, applications for ballots, and other election material was delivered to the precinct and was receipted for by respondent, Lucille Fields. There were 300 Republican and 300 Democratic ballots, in all, delivered to the precinct. All respondents served in the capacity of judges or clerks on April 13, during the time the polls were open, and after the closing of the polls they, presumably, proceeded with the counting of the ballots, the tabulation of the votes, and other duties of their offices. About 10:00 a. m. on the following morning, April 14, they returned the sealed ballot sacks, application for ballots, tally sheets, statement of votes, and other election supplies to the election commissioners' office.

The statement of votes prepared by respondents and signed by them represented that 300 Republican and 193 Democratic ballots had been cast, while the applications for ballots showed that there were only 147 applications for Republican ballots, and one absentee Republican ballot. Some other irregularities were also found in the statement of votes. For the office of

county auditor on the Democratic ticket, Agnes Tiernan had been credited with 181 votes, and her opponent, Leonard Reinhardt, was given only 34, making a total of 215 votes, and which was more than the total of 193 Democratic ballots called for. The statement of votes also showed that one Republican candidate for delegate to the National Convention received 282 votes; one candidate for Congress, 172 votes; and one candidate for states attorney, and also, for circuit clerk, 281 votes each, while only 148 Republican ballots were requested in all. The tally sheets and tally marks on the exhibits which were introduced into evidence before the county judge, showed indications of irregularities and inconsistencies.

The county judge, under the provisions of par. 7–30, ch. 46, 1947 Ill. Rev. Stat. [Jones Ill. Stats. Ann. 43.726], issued a citation against respondents, requiring them to appear in the county court and show cause why they should not be adjudged in contempt of court. The citation was issued on April 15, 1948, and was made returnable the following April 23. Respondents appeared on that day, through five lawyers, and requested an order for filing a specification of charges against them. A written specification of charges was filed on April 24, 1948. A motion to dismiss such written specification of charges was argued and overruled. Respondents then filed a verified answer, denying any misconduct.

On a hearing before the court, applications for ballots, statement of votes, tally sheets, the poll book, oaths of office, and other election material of the precinct, which were secured, and apparently in the identical condition as when delivered to the election commissioners' office by respondents, were all introduced into evidence. The sealed ballot sacks were opened and the ballots were examined and counted in open court, in the presence of respondents and respondents' counsel.

The facts, as demonstrated by the evidence, showed that there were but 193 Democratic and 148 Republican ballots requested by the voters of the precinct, and it also showed that although the respondents in the statement of votes and tally sheets showed Agnes Tiernan with 181 votes, and her opponent with 34, the actual count of the ballots showed only 129 ballots marked for that office, and that Agnes Tiernan actually received only 55 votes, while her opponent, Leonard Reinhardt, received 74. The evidence also showed that the sealed sack contained 96 Republican ballots which were marked, but uninitialed, and which had been folded but once and could not have been inserted into the ballot box by a voter, nor taken from the ballot box by respondents. Other irregularities in detail were also shown in the evidence. Respondents refused to testify on the ground that their testimony might incriminate them in a criminal proceeding arising out of their conduct as election officials in the primary.

Witnesses offered on behalf of respondents testified as to their previous good character, and there was some testimony to the effect that some unknown persons came into the polling place and disturbed some papers with which respondents were working and tabulating votes, but there was no showing that such persons were present at the time of the counting of the votes by respondents, nor did the evidence explain in any manner how respondents could have counted more votes than were actually cast. At the close of the hearing, the court, in a written finding, found all the respondents guilty of contempt and imposed the jail sentences upon them as hereinbefore stated, and removed them from office as judges and clerks of election. On appeal in this court respondents contend that the trial court erred in overruling respondents' motion to strike the specification of charges against them, and likewise, that the court erred in the admission or ex-

clusion of evidence, as well as in fixing the punishment, which respondents contend is excessive under the circumstances.

The proceeding in the county court was pursuant to par. 7—30, ch. 46, 1947 Ill. Rev. Stat. [Jones Ill. Stats. Ann. 43.726] which provides in substance that, persons actually serving as primary judges or clerks are deemed to be officers of the county court and are liable to punishment by such court in a proceeding for contempt for any misbehavior as such primary judges or clerks, to be tried in open court on oral testimony, in a summary manner, without written pleadings. The proceeding is controlled entirely by the provisions of the statute (*People ex rel. Rusch v. Levin,* 305 Ill. App. 142, 148; *People v. Sylvester,* 242 Ill. App. 565, 572).

It was not necessary that the court proceed in this matter with any formal statement in writing. It was the intention of the Act that proceedings under it be summary, vigorous, and effective (*Sherman v. People,* 210 Ill. 552, 559). Respondents received a full and impartial hearing not only as to the exact nature of the charges against them, but they were given the fullest opportunity of offering evidence in their own defense. This was not a matter involving criminal contempt, and the court had the power to regulate the procedure in this type of case (*People v. White,* 334 Ill. 465; 485), so that the old common law rule of the answer of respondent, under oath, purging the contempt does not apply as it would in a case of a criminal contempt. As stated in the case of *People v. Sheridan,* 349 Ill. 202, 207, "Since it was not necessary or essential that a petition be filed, it is unnecessary to consider whether the allegations of the petition that was filed were sufficient to charge conduct constituting contempt of court." It is apparent, therefore, that there is no basis for reversal in the action of the court with reference to the motion to strike the specification of charges against respondents.

██ ██ In the instant case the respondents were officers of the county court and under the statute were amenable to contempt proceedings (*People v. White, supra; People v. Madel,* 337 Ill. 169, 171). A neglect of duty, or fraudulent or corrupt conduct, or any misbehavior in office in violation of the election laws, may be made the basis of a contempt proceeding under the statute (1947 Ill. Rev. Stat., ch. 46, par. 29—15, and par. 7—30 [Jones Ill. Stats. Ann. 43.1070(15), 43.726]; *Sherman v. People, supra*). The institution of the action by the county judge was proper under the statutes.

 While a contention was made on appeal that the court erred in admitting all exhibits, on the ground that they were not in the same condition as when delivered to the election officials, on the hearing in the court below the parties all insisted that the ballots themselves be admitted in evidence and impounded by the court. There was no specific objection of improper identification of exhibits, or of a failure to lay a proper foundation for the admission of exhibits objected to, nor in the brief on appeal in this court are there any specific arguments or reasons in support of such objections. Under the circumstances there was no basis for reversal on matters relating to admission of exhibits. The respondents cannot assign as error the admission of the ballots into evidence since the admission of the ballots was done with the consent of respondents (*Kellner v. Schmidt,* 328 Ill. 426, 430). Objections must also be specific and grounds therefore cannot be urged for the first time on appeal (*Johnson v. Bennett,* 395 Ill. 389, 398; *Silberman v. Washington Nat. Ins. Co.,* 329 Ill. App. 448, 453). There was evidence tending to show that the election laws had been violated and the ballots were admissible as corroborative evidence. There was no requirement under the proceedings in the instant case that preliminary evidence be presented to show that the ballots were preserved in the manner required in an election contest (*People v. Harrison,* 384 Ill. 201, 206).

 This cause was tried before the court and the findings of a trial court in a case tried without a jury are binding upon the Appellate Court, unless such findings are clearly and manifestly against the weight of the evidence (*Valdoff v. Illinois Bankers Life Assur. Co.*, 320 Ill. App. 387, 389).

 The evidence showed that 96 uninitialed ballots had never been in the ballot box, that the election judge had failed to initial the ballots, and it was manifest that the clerks and judges wrongfully counted 96 uninitialed ballots. The discrepancies showed a dereliction of duty which made it a question of fact for the court (*People ex rel. Rusch v. Williams*, 292 Ill. App. 228, 232; *People ex rel. Rusch v. Kotwas*, 275 Ill. App. 406, 411). The violations disclosed by the evidence could hardly have resulted from mere mistake or inadvertence. The names of the judges and clerks appeared on the tally sheets, the statement of votes, and the ballot sacks. The evidence clearly sustained the finding of the court below that the respondents were guilty of contempt in violation of the statutes relating to primary elections. This court, under the evidence, will not substitute its finding for that of the trial court since the trial court heard the witnesses testify, including those who testified on behalf of the respondents, and we cannot say that the findings of the trial court were contrary to the manifest weight of the evidence on the record as presented in this court.

 The only question remaining for consideration is whether or not the punishment which has been fixed is excessive. The court below in giving consideration to the evidence in a written order stated that he had given consideration to the case of *People v. Madel*, 337 Ill. 169, in which the Supreme Court found that punishment of one year in prison for similar conduct was not excessive, but that he was not going to impose as severe a sentence in this case because, so far as the court knew, this was a first offense for these respond-

ents. The statute has not fixed the limit of the punishment in cases of this type (*People v. Madel, supra*), but as stated by the county court in the instant case, "Courts of this State have indicated that the penalty must act as a punishment and as a deterrent (*People ex rel. Marski v. Belvedere*, 333 Ill. App. 104, 112)." Judges and clerks of election must understand that it is the sworn duty of such officials to the count votes as cast, and their failure to do so renders them liable to the penalties of the law (*People ex rel. Rusch v. Kotwas, supra*, p. 414).

Upon a review of the entire record we are unable to conclude that the punishment fixed by the county court was excessive under the facts and circumstances as shown by the record in this case.

The judgment of the county court will, therefore, be affirmed.

*Judgment affirmed.*

BARDENS, J., and SCHEINEMAN, J., concur.