William L. O'Connell, Appellant, v. David S. Horwich, Appellee.

Gen. No. 38,445.

Opinion

filed April 7, 1936.

Norman C. Barry, of Chicago, for appellant; M. P. Ainsworth and S. J. Cotter, both of Chicago, of counsel.

Levy & Schmetterer, of Chicago, for appellee.

Mr. Justice Friend delivered the opinion of the court.

William L. O'Connell, as receiver of Sheridan Trust & Savings Bank, brought suit against defendant to recover on a check for $804, dated April 1, 1931. The

court found the issues against plaintiff, and this appeal followed.

In October, 1930, defendant was appointed as attorney for the Haegele Ice Co., to represent it in the sale of its assets to the Maginnis Ice Co. The directors of the Haegele Ice Co. passed a resolution, which was introduced in evidence, appointing defendant as trustee, who together with William Haegele, president of the company, was to collect all of the corporate assets and deposit them in a bank account to be designated as "David S. Horwich, Trustee." The funds in the account were to be withdrawn on the joint signatures of William Haegele, president, and the defendant, as trustee. It was contemplated by the resolution that checks be drawn on the funds of the company for the purpose of paying accounts, notes, money due under contracts and other obligations, as ordered by the board of directors of the Haegele Ice Co., either on specific or general order, and the signature of the president, William Haegele, on any check was to be conclusive upon defendant as to the validity of the authorization by the board of directors of the company for the execution of such check by defendant, as trustee. The resolution also provided that defendant should not be required to look to the purpose of the expenditure *and should not be personally liable to the corporation or any stockholder or creditor or other person dealing with the trustee.*

After the resolution was passed the accounts payable and receivable were settled by Haegele and defendant, and it then became necessary, preliminary to distributing the remaining funds on hand to the common stockholders of the corporation, to pay the preferred stockholders the amounts represented by their respective certificates. Haegele was the individual owner of a large block of preferred and common stock of the corporation and had pledged this

stock as collateral security for his individual notes at the Sheridan Trust & Savings Bank. As additional security he had also pledged 20 shares of preferred stock of the Lake Zurich Creamery Co., which was owned by the Haegele Ice Co. The personal loans to Haegele were made at different times and separate collateral notes were executed by him covering the particular collateral deposited on each loan. When the Haegele Ice Co. was ready to pay its preferred stockholders, Haegele advised defendant that the preferred stock owned by him had been pledged as security for a debt at the Sheridan Trust & Savings Bank. Thereupon defendant immediately communicated with the bank, learned that A. R. Patterson, an assistant cashier, had charge of the Haegele accounts, and made an appointment to meet him at defendant's office. Defendant then explained to Patterson the extent of his authority, the manner in which the affairs of the Haegele Ice Co. were being liquidated, and exhibited to him the resolution of the board of directors of the Haegele Ice Co., dated October 27, 1930. Patterson read the resolution and subsequently arranged to deliver up, for $2,800, the preferred stock which the Sheridan Trust & Savings Bank held.

Having thus retired the preferred stock, Haegele and defendant proceeded to pay the common stockholders their distributive shares of the balance on hand, which amounted to 50 cents for each share of common stock.

In the forepart of April, 1931, an agreement was made with the Sheridan Trust & Savings Bank by which it agreed to deliver up 402 shares of common stock of the Haegele Ice Co., as well as the 20 shares of preferred stock of Lake Zurich Creamery Co., in consideration of the payment of $804. To consummate this transaction a check was drawn on Foreman-State National Bank where defendant, as trustee, had the account, payable to William Haegele, individually,

and signed by him as president of Haegele Ice Co., jointly with defendant, as trustee. The check was thereupon immediately indorsed by Haegele as payee to the order of the Sheridan Trust & Savings Bank, and arrangements were made to have the bank's messenger deliver the collateral to defendant's office and at the same time call for the check in payment of the indebtedness. The messenger delivered the 402 shares of common stock, but failed to bring the 20 shares of Lake Zurich Creamery Co. stock. Defendant thereupon telephoned the bank and was told to deliver the check to the messenger, and at the same time was assured that the bank would deliver the 20 shares of Lake Zurich Creamery stock as soon as it could be located. In the meantime the bank held up deposit of the check because the Lake Zurich Creamery stock could not be located. Several months later the bank closed its doors, and Ernest Ridgeway was appointed receiver. Some eight months thereafter Ridgeway found the check among the records of the bank and attempted to put it through for collection, but in the meantime payment thereof had been stopped. After an investigation of the facts relative to the issuance of the check, Ridgeway evidently abandoned the claim. Thereafter plaintiff became successor receiver, and some three and one-half years after the check was issued he instituted this proceeding against defendant, individually, to recover the amount of the check.

The resolution under which defendant acted as trustee follows:

"Resolved: That all moneys obtained by virtue of the contract dated October 10, 1930, between this Company and Thomas B. Maginnis, be deposited in an account to be designated as 'David S. Horwich, Trustee'; that all moneys obtained through collection of the accounts receivable outstanding in favor of The Haegele Ice Company, and all other moneys obtained from any source whatsoever, secured for the account

of The Haegele Ice Company, be deposited in the account to be designated as 'David S. Horwich, Trustee'; that William Haegele, President of the Corporation, and David S. Horwich, Trustee as aforesaid, be authorized, empowered and directed to adjust, compromise and release any claim or claims, whether upon accounts receivable, notes receivable, or otherwise, in favor of The Haegele Ice Company, and to deliver proper releases, quittances and receipts on behalf of The Haegele Ice Company in connection therewith; that the President, William Haegele, jointly with David S. Horwich, Trustee, be empowered to draw checks on the account of 'David S. Horwich, Trustee' (for the benefit of The Haegele Ice Company) for such accounts payable, notes payable, contracts payable and other obligations and expenses, as ordered by the Board of Directors of The Haegele Ice Company, either on specific order or general order, and the signature of the President, William Haegele, on any check drawn on the account of 'David S. Horwich, Trustee,' shall be conclusive upon David S. Horwich as to the validity of the authorization by the Board of Directors of the Company for the execution of such check by David S. Horwich, Trustee; David S. Horwich Shall Not Be Required To Look to the purpose of the expenditure so made from said trust account, and shall have no personal liability to the Corporation, any stockholder or creditor thereof, or any person dealing with the Trustee.''

The principal question presented for determination is whether defendant, who was admittedly acting in the capacity of a trustee, can be held personally liable for the amount of the check involved. It is plaintiff's principal contention that when a trustee enters into a contract it becomes his personal undertaking, and if he wants to protect himself from personal liability he must stipulate that he is not to be held personally re-

sponsible and that the other party has to look solely to the trust estate. This is undoubtedly the rule laid down in the cases cited by plaintiff. (*Schumann-Heink v. Folsom,* 328 Ill. 321; *Wolf v. Schiff Trust & Savings Bank,* 276 Ill. App. 527; *Allegheny Tank Car Co. v. Culbertson,* 288 Fed. 406.) However, we think that the transaction between defendant and the Sheridan Trust & Savings Bank, through its assistant cashier, Patterson, as disclosed by the undisputed evidence, amounted to a stipulation on the part of the bank that it would not look to defendant personally for payment of the check and that the bank's subsequent action so indicates. It is undisputed that the bank had been specifically advised that defendant was not personally liable and had no interest in the affairs of the corporation, except as trustee; that he was signing checks only under the terms of the resolution of the board of directors of the Haegele Ice Co. The resolution had been exhibited to the bank, and Patterson, its assistant cashier, had read it and was familiar with its contents. An examination of the document shows that all funds of the Haegele Ice Co. were to be deposited to the special account of defendant as trustee. The resolution provided that as trustee he was instructed to collect all the assets of the corporation and deposit them in an account and to draw against the funds so collected by checks signed by himself, as trustee, together with William Haegele, president of the corporation. That the bank evidently understood the relationship of defendant with the Haegele Ice Co. is further indicated by the fact that when the preferred stock held as collateral by the bank was delivered up to defendant it was paid by a check for $2,800, similarly executed by defendant, as trustee, and by William Haegele as president of the corporation. At the time of this first transaction, and before delivery of Haegele's preferred stock to the defendant,

the bank certainly knew that it was dealing with defendant as trustee; otherwise it is difficult to conceive why it would turn over to him stock issued to Haegele and standing in his name. And when it delivered to him 402 shares of Haegele's common stock, accepting in payment the check for $804, it undoubtedly also knew that defendant was issuing that check in his capacity as trustee, and that they were dealing with him as such. Patterson, having read the resolution, was also apprised of the fact that the resolution exempted defendant from personal liability to the corporation, as well as to "any person dealing with the trustee."

We think the rule of law which requires a trustee, in order to protect himself from personal liability for his contractual undertakings, to stipulate that he shall not be held personally responsible, was complied with in this instance when the bank, with full knowledge of the authority of defendant as trustee and of his limited responsibility as such, accepted these checks and turned over to him stock held as collateral to Haegele's personal loans. It impliedly agreed to deal with defendant as trustee and to look to the funds under his control and not to him personally for payment. Since the receiver here is in no better position than the bank would have been, he is likewise bound by the knowledge which the bank had of defendant's status as trustee and of its implied consent to deal with him solely as trustee.

Defendant's affidavit of merits sets up a total failure of consideration for the check, based upon the loss of the Lake Zurich Creamery stock, and it is urged on behalf of plaintiff that the defense is unavailing, since defendant proved only a partial failure of consideration. In view of our conclusion as to the principal contention in the case, we deem it unnecessary to discuss this point.

It is further urged that the court erred in admitting in evidence a copy of the resolution adopted by the Haegele Ice Co. under the authority of which defendant was acting as trustee. No cases are cited to support the contention, and we know of no reason why the resolution should not have been admitted, inasmuch as the defense interposed is based upon the contents and substance of the resolution and the undisputed evidence shows that the bank was familiar with its contents and defendant's authority thereunder.

We find no reversible error and therefore the judgment of the municipal court is affirmed.

*Affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.