DAY et al. v. NEWTON.

HIGHWAY INSURANCE UNDERWRITERS v. SAME.

Nos. 2852, 2853.

Circuit Court of Appeals, Tenth Circuit.

May 13, 1944.

Irwin Snattinger and Roy N. McCue, both of Topeka, Kan., for appellants.

Alex Hotchkiss, of Lyndon, Kan., and Robert Stone, of Topeka, Kan. (James A. McClure, Robert L. Webb, Beryl R. Johnson, and Ralph W. Oman, all of Topeka, Kan., on the brief), for appellees.

Before PHILLIPS and HUXMAN, Circuit Judges, and RICE, District Judge.

HUXMAN, Circuit Judge.

Plaintiffs, Leoto Newton and B. M. Newton, instituted their separate actions in the United States District Court for the District of Kansas to recover damages resulting from a collision between a trailer truck operated by the defendant H. A. Day, and an automobile which was being driven by plaintiff B. M. Newton. The two causes of action were consolidated for trial and were tried to the court. The collision occurred between the trailer part of the truck and the automobile. Judgment was entered for each plaintiff, and the defendants have appealed. The grounds relied upon for reversal are: (1) That there is a failure of evidence to establish negligence on the part of defendants or their agents; (2) that both plaintiffs were guilty of contributory negligence; and, (3) that the amount of recovery in each case was excessive.

The accident occurred about 8 :00 o'clock P.M. on November 28, 1942, on U. S. Highway 75, approximately one-half mile north of Lyndon, Kansas. The highway runs north and south at the place where the collision occurred. B. M. Newton testified that it was a dark, stormy night, that it was snowing and the wind was blowing; that he was driving north on the right side of the highway at a speed of approximately ten or fifteen miles an hour; that about three or four hundred yards ahead of him he saw dim lights coming toward him through the snow; that as he approached the lights he slowed down; that he thought he was completely on his side of the highway; that as he got past the tractor, the next thing "there was just two big wheels right in front of me and the crash occurred." He testified that the truck seemed to be traveling on the east side of the middle of the highway. Mrs. Newton testified that she saw the lights coming directly toward them; that they passed the front end of the truck and she thought they were by it when just out of nowhere those big wheels loomed up directly in front of them.

Oliver L. Green, the sheriff, testified that he came upon the scene of the accident shortly after it happened; that he made measurements which indicated that the truck was to the east of the center of the highway; that he told Mr. Pasley, the driver of the truck, that it looked like he was past the center of the highway and that his reply was, "Well, it looks that way." He also testified that the driver of the truck told him that he was "tapping his brakes slightly to slow his speed."

This evidence sustained the finding of negligence on the part of the driver of the truck. Driving on the wrong side of the road, especially under weather conditions as they were that night, was negligence. It is conceded that applying the brakes to the tractor part of the truck to reduce the speed would have a tendency to cause the trailer to overrun the truck. This would tend to cause the trailer to "jackknife" or swing at right angles to the direction in which the truck was traveling. If this occurred, it would tend to swing the trailer directly in front of the automobile after it had passed the tractor. True, the driver of the truck denied that he was traveling on the wrong side of the road or that he had applied his brakes to slow his speed. He testified that he was tapping his trailer brakes in order to keep any slack out of the truck as he approached

the car. If he did this, it would cause the trailer to travel in line with the truck. The difficulty in which appellants find themselves is that the trial court apparently rejected this evidence and based its findings of negligence on the testimony of the plaintiffs and their witnesses. The court found that the trailer was swinging to the east across the portion of the highway upon which the automobile was traveling. This resolution of the conflict in the evidence was for the trial court, and we may not substitute our judgment for that of the trial court. Its finding of negligence on the part of the driver of the truck is based upon substantial evidence and is binding on this court.

 It is contended that B. M. Newton was guilty of contributory negligence because he did not pull over to the extreme edge of the shoulder of the highway. If the trailer "jack-knifed" and whipped in front of the car, there is no evidence that he could have pulled over far enough to avoid a collision. He did pull over far enough to pass the tractor and would have passed the trailer had it been traveling in line with the tractor. There was no negligence in his failure to anticipate that the trailer would jack-knife and whip in front of his car. There being no contributory negligence on his part, it followed that there could be none on the part of Mrs. Newton, who was riding with him in the car.

The court entered judgment in No. 2852 in favor of Mrs. Newton for $2,000, and in No. 2853 in favor of B. M. Newton for $3,000. It is contended that these judgments are so grossly excessive as to warrant reversal in each case. The evidence established that Mrs. Newton was hurled into the windshield; that her head was badly cut and full of ground glass; that her legs were badly lacerated and cut; that she had glass in her "hair, my mouth and my teeth for weeks, it seemed like." The evidence established that she has a permanent scar on her forehead two and one-half inches long, and a permanent fibrous growth on her knee. She suffered headaches, backaches and other pains for at least a month. She also lost items of personal property valued at $156.00. Deducting her property loss, she recovered $1,844.00 for her personal injuries. In addition to lacerations and bruises, B. M. Newton suffered seven broken ribs and an injury to his left hand which interferes to some extent with the use of the hand and is more or less permanent. He was confined to the hospital for nine or ten days. He suffered the following items of loss: six weeks' salary, $333.33; hospital and medical bills, $200.00; net loss on his automobile and transportation charges to Topeka, $50.50. Deducting his actual monetary loss, he recovered $2,416.17 for seven broken ribs, a permanently injured hand, and for pain and suffering.

 We cannot say from the record that these judgments are excessive. In the absence of a showing that the judgments are so excessive as to shock the conscience of the court, it is our duty to affirm.

The judgments in both cases are affirmed.