**FREESE v. JONES.**

No. 3268.

Circuit Court of Appeals, Tenth Circuit.

July 18, 1946.

Rehearing Denied Aug. 22, 1946.

Geo. H. McElroy, of Oklahomo City, Okl. (Mosteller & McElroy, of Oklahoma City, Okl., on the brief), for appellant.

Lester L. Gibson, of Washington, D. C. (Sewall Key and Robert N. Anderson, both of Washington, D. C., and Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This case involves income taxes of the estate of John H. Markham, deceased, for the year 1934. A tentative tax return for the year 1934 was filed on behalf of the estate March 15, 1935. A final return was filed September 17, 1935, showing no tax due. Following a review and audit of the return, the Commissioner of Internal Revenue determined a deficiency in the sum of $128,132.66. This tax was duly assessed and was paid, together with interest thereon, under protest. Thereafter, on May 12, 1938, a claim for a refund of $41,970.52, with interest of $4,930.10, was filed, in which the claim was made for the first time that the decedent's estate sustained a loss in 1934 on account of the worthlessness in that year of 11,333 shares of stock of the Exchange National Bank of Tulsa, Oklahoma. On January 17, 1942, the Commissioner of Internal Revenue rejected the claim. Thereafter, on December 13, 1941, a further claim was filed for a refund of

---

[7] Emphasis supplied.

the entire deficiency assessed, on the ground of a sustained loss of $305,959.20, on account of the worthlessness in 1934 of 12,708 shares of the stock of the Exchange National Bank. This claim was not rejected, nor acted upon, but more than six months elapsed between its filing and the institution of this suit. Thereafter appellant instituted this action against H. C. Jones, Internal Revenue Collector, to recover the amount in question. Judgment was entered for the defendant in the trial court below, from which judgment this appeal is prosecuted.

The correctness of the trial court's judgment depends upon whether it is sustained by substantial evidence that the stock became worthless in 1933, the year in which the court found it became worthless, or whether the evidence compels a conclusion that it became worthless in 1934, the year contended for by the appellant.

The worthlessness of the stock is conceded by all as is the right to a deduction under 26 U.S.C.A. Int.Rev.Code, § 23, and Treasury Regulation 86, promulgated under the Revenue Act of 1934 for the consequent loss if taken in the year in which the loss occurred.

The Exchange National Bank of Tulsa, Oklahoma, was organized under the national banking laws. It carried on an active banking business in Tulsa, Oklahoma, for a long period of time. For a period of approximately two weeks prior to March 14, 1933, it was closed, first on account of a bank moratorium declared by the State of Oklahoma, and then on account of the national bank holiday effective March 6, 1933. On March 14, 1933, it reopened without limitations on its activities, and continued in business until April 24, 1933.

The National Bank of Tulsa, Oklahoma, was organized April 23, 1933, for the purpose of taking over the business of the Exchange National Bank. On April 24, 1933, by contract, the National Bank of Tulsa purchased certain assets of the Exchange National Bank, having a book value of $8,590,117.52, and assumed all its liabilities, totaling $28,030,790.59. The Exchange National Bank executed two notes payable to the National Bank of Tulsa, totaling $19,440,673.07. The amount of these notes represented the difference between the amount of assets transferred and the amount of liabilities assumed by the National Bank of Tulsa. Specific assets of the Exchange National Bank were pledged as collateral security for each of these notes, and the entire assets of the Exchange National Bank, totaling $22,128,478.46, together with assets previously charged off, totaling $3,444,492.89, were pledged as security for the payment of these two notes. The stockholders of the Exchange National Bank received nothing as a result of the transfer of the assets of the bank to the National Bank of Tulsa, but, based solely on the book value of the assets at the time of the transfer and exclusive of any value in assets previously charged off, they had an equity in the assets of $2,687,805.39.

The National Bank of Tulsa began business in the same banking room and with the same personnel as that of the Exchange National Bank, April 25, 1933. It began liquidating the assets of the Exchange National Bank through a liquidating committee about April 25, 1933. The maturity date of the two notes given to the National Bank of Tulsa was extended when the notes fell due. The liquidation of the pledged assets continued until 1940. At that time the appraised value of these assets showed a deficit of $111,262.44 over the amount still due the National Bank of Tulsa. This amount was charged off by the National Bank and the two liquidation notes were canceled and returned to the Exchange National Bank.

The government relied largely on the testimony of W. H. Donahue, a national bank examiner, to sustain its contention as to when this stock became worthless, while appellant relied in the main upon the testimony of W. A. Brownlee and Albert H. Rogers to sustain his position. Donahue testified that as national bank examiner he made a detailed examination of the assets of the Exchange National Bank starting August 31, 1933 and ending September 26, 1933; that he, together with his assistants, examined and appraised each asset for the purpose of determining the value of these

456

assets held by the National Bank of Tulsa; that in the course of his examination he consulted with the officers of the bank and with the members of the executive committee as to the valuations; that among the persons with whom he consulted were Mr. Brownlee and Mr. Rogers. Without going into detail, the sum and substance of his testimony was that there was no equity in these assets over the amount for which they were pledged with the National Bank of Tulsa. He testified that in his opinion the stock of the Exchange National Bank became worthless in 1933, some time prior to his examination. On the other side, the substance of the testimony of Brownlee and Rogers was that there was a substantial equity in the assets in 1933 and that the stock did not become worthless until some time in 1934. Again, it would serve no useful purpose to give a detailed statement of the testimony of these two witnesses which supports their conclusions in this matter. Suffice it to say that all three of these witnesses were unquestionably qualified to testify concerning this matter. Donahue had been in the banking business in Oklahoma from 1908 to 1925, and thereafter had been a national bank examiner in the Tenth Federal Reserve District. Brownlee had had considerable banking experience. He had been with the Exchange National Bank and became affiliated with the National Bank of Tulsa. Rogers also had had banking experience and was an officer with the new bank.

■■■ The principle of law that a finding by the Commissioner is presumptively correct and casts the burden of overcoming it upon him who challenges it is so well established that no authorities will be cited in support thereof, as is also the principle that the findings and judgment of the trial court will not be set aside upon appeal unless they find no substantial support in the record. Appellant does not contend to the contrary. His position is that there is no support in the record to sustain the finding of worthlessness of the stock in 1933. With this we cannot agree. The testimony of Donahue, buttressed by attending facts and circumstances in the record, constitutes substantial evidence and supports the findings and judgment of the trial court.

Foster v. Commissioner, 1 Cir., 112 F.2d 109, involved the identical question present in this case. The taxpayer there likewise contended that the stock of the Exchange National Bank became worthless in 1934. The Board of Tax Appeals upheld the determination by the Commissioner that it became worthless in 1933. The First Circuit, on appeal, affirmed the decision of the Tax Court. While not binding upon us, the Foster case is persuasive. It presented the identical question and was decided on substantially the same testimony that was introduced in the court below. The same three witnesses who testified in this court testified in the Foster case. The transcript of their testimony, with the accompanying exhibits, was introduced at the trial of this case. The two cases are indistinguishable upon the facts. Further reference is made to the Foster case because in the opinion much of the evidence which, in the interest of brevity, is omitted here and which sustains the conclusion that the stock became worthless in 1933, is narrated.

The evidence on the issue as to when the stock in question became worthless was in sharp conflict. The trial court resolved the question against the contention of appellant. Its findings and judgment are supported by substantial evidence, and the judgment is therefore affirmed.